Nellie Evans **HEACOCK**, Appellant,

v.

Carleton **TOWN**, Appellee.

No. 661.

Supreme Court of Alaska.

Oct. 31, 1966.

Maurice T. Johnson, Fairbanks, for appellant.

R. J. McNealy, Stephen S. DeLisio and Grace Berg, Schaible, of McNealy & Merdes, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

Appellant has appealed from a judgment based on a jury verdict which awarded appellant $500 as damages for an injury resulting from a rear-impact collision involving appellant's car and a car driven by appellee.

██ During the impaneling of the jury, a Mr. Bob Thomas was called as a prospective juror, and the following examination by Mr. Parrish, appellant's trial counsel,[1] took place:

MR. PARRISH: Bob * * * I'm sure you know both Mr. McNealy and I by our first names?

MR. THOMAS: I do. . . .

MR. PARRISH: And * * * you have sat on civil juries before?

MR. THOMAS: And I sat on a Grand Jury concerning that lady and I fought tooth and nail for her—

THE COURT: Just—

MR. THOMAS: —I don't belong here.

THE COURT: —just a moment, sir. * * *

MR. PARRISH: Do you feel that there is anything about your acquaintance with this lady— . :

MR. THOMAS: Yes, sir, I do.

MR. PARRISH: —that would prejudice you for or—

MR. THOMAS: Yes, sir.

MR. PARRISH: —against her?

MR. THOMAS: For.

THE COURT: Well, just a moment. I won't have any more questions asked that will invite a comment. I know it's very hard, but—

MR. PARRISH: Well, I was kind of surprised, Your Honor, but at any rate, do you feel that you would be biased—

MR. THOMAS: I certainly do.

MR. PARRISH: We'll accept the challenge for cause of Mr. McNealy.

MR. McNEALY: I so challenge.

Appellant contends that the remarks of Thomas were prejudicial, and therefore that the trial court erred by not declaring a mistrial on its own motion.

Appellant's counsel did not move for a mistrial, nor did he request the court to admonish the jury to disregard Thomas' remarks. The failure to object to prejudicial remarks and to move the court for a mistrial or for an admonition to the jury constitutes a waiver of the objection.[2] This does not mean that we shall not consider plain error, even though not objected to below, which is so substantial as to result in injustice.[3] But such a case is not present here. As we read the remarks of Thomas, they were more likely to have been beneficial to appellant, rather than prejudicial. Thomas spoke in favor of appellant, not against her. There is no basis for the contention that the jury was prejudiced against appellant by such remarks.

Appellant contends that the $500 awarded by the jury is wholly inadequate compensation for the injury sustained by her, and that this court should modify the judgment and increase the damages.

██ The question of whether damages are inadequate, or excessive, is in the first instance committed to the discretion of the trial judge and should be raised on a motion for a new trial.[4] The reason for this is that the judge who presided at the trial and ob-

1. Counsel for appellant on this appeal was not appellant's trial counsel.

2. Gist v. French, 136 Cal.App.2d 247, 288 P.2d 1003, 1010 (1955).

3. Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430, 434 (Alaska 1965).

4. McCoy v. Cate, 117 F.2d 194 (1st Cir. 1941); Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825, 830 (3d Cir. 1951); Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 407–409, 4 A.L.R.2d 1064 (4th Cir. 1948); Kos v. Baltimore & Ohio R., 28 F.2d 872 (6th Cir. 1928); Spero-Nelson v. Brown, 175 F.2d 86, 89 (6th Cir. 1949); Consumers Power Co. v. Nash, 164 F.2d 657, 660 (6th Cir. 1947); Bucher v. Krause, 200 F.2d 576, 586–587 (7th Cir. 1952), cert. denied, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953); Flener v. Louisville & Nashville R., 198 F.2d 77, 79–80 (7th Cir. 1952); E. L. Farmer & Co. v. Hooks, 239 F.2d 547, 554 (10th Cir. 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 699, 1 L. Ed.2d 665 (1957); Smith v. Welch, 189 F.2d 832, 837 (10th Cir. 1951); Hulett v. Brinson, 97 U.S.App.D.C. 139, 229 F.2d 22, 25 (1955), cert. denied, 350 U.S. 1014, 76 S.Ct. 659, 100 L.Ed. 874 (1956); 6 Moore, Federal Practice § 59.08 [6], at 3836–3839 (2d ed. 1965).

served all the events that occurred there, and who heard the witnesses and observed their demeanor, is in a far better position than an appellate court to know whether in the light of all that transpired at the trial the damages awarded by the jury were so wholly inconsistent with, or so much less than the proof of damages as reflected by the evidence as to be fairly called inadequate.[5]

██ Here the appellant made no motion for a new trial. We might dispose of the matter at this point by saying that since the discretionary authority of the court below to grant a new trial was never invoked by the appellant, there is nothing for us to review.[6] We have, however, reviewed the record to ascertain whether the damages awarded appellant were so grossly inadequate as to amount to a miscarriage of justice.

█ Appellant claims she suffered a whiplash injury,[7] resulting in a continuous pain in the neck which wouldn't permit her to turn her head normally. She also complained of pain in her left arm and thumb.

X-rays revealed certain spinal irregularities consisting of a distortion and spurring of the bodies of the fifth and sixth cervical vertebrae in appellant's neck, and a narrowing of the space between such vertebrae. Dr. Lundquist, a general practitioner with no specialty in orthopedic or neurosurgery, testified that such spinal irregularities as exhibited in the x-rays could have been caused by the accident. However, on cross-examination he admitted that the spinal condition could have existed for quite a while prior to the time he saw appellant in July, 1962.[8] Dr. Lundquist also testified that the type of injury exhibited be-

tween the fifth and sixth cervical vertebrae could have been caused by the compression and extension resulting from a whiplash.[9]

Dr. Haagland, an orthopedic specialist, testified that the type of spinal irregularities shown by appellant's x-rays are commonly caused by wear and tear over a period of years. He expressed the opinion that any event which would have been sufficient to produce appellant's condition by compression between the vertebrae would have required hospitalization at the time of the injury, and would have resulted, not from a whiplash but from a straight head-on compression, such as would occur from diving into a shallow swimming pool.

Appellant testified to the effect that the impact between the cars was severe. On the other hand, appellee and his wife testified to the effect that the impact was very slight. Appellant was able to and did get out of her car immediately following the accident. She did not consult a physician regarding her alleged injury until about six months following the accident. She testified that she had worked continuously after the accident in the year preceding the trial with the exception of a two-week period. She did not attribute the two weeks absence from work to the injury she claimed to have sustained in the accident.

The jury, who heard the testimony of the witnesses and observed their demeanor, had a basis from the evidence for concluding that appellant's spinal irregularities and symptoms of pain either were not attributable to the accident at all or were attributable only partially and to a slight extent. In these circumstances a verdict of $500 is not indicative of a miscarriage of justice.

The judgment is affirmed.

5. Cf. Montgomery Ward v. Thomas, 394 P.2d 774, 775 (Alaska 1964); Salinas v. State, 373 P.2d 512, 513 (Alaska 1962).

6. 6 Moore, Federal Practice § 59.14, at 3890 (2d ed. 1965).

7. A whiplash injury occurs when a car is struck from the rear and the head of

one sitting in the car is flung backward sharply, and then forward sharply as the motion of the car ceases.

8. The accident took place in the early part of January, 1962.

9. Supra note 7.